*48 MEMORANDUM
BV THE COURT
This case is identical .with that of Reinecke v. Northern Trust Co., decided by the Supreme Court on January 2, 1929 [218 U. S. 339], so far as the decision applies to the first two trusts involved in that case. In both cases the decedent and grantor reserved the power to revoke the trust. In fact, the instant case is stronger against the plaintiff in that the trust instrument also provided that on the death of the decedent and grantor ■ the trust property should be transferred and delivered as he might by his will appoint, or in default of such appointment, share and share alike among his descendants. It is 'clear under the holding in the Reinecke case that the trust fund was properly included in the taxable property of the- estate. This ruling disposes of the only question in the case, and it follows that plaintiff’s petition must be dismissed. It is so ordered.
OPINION ON MOTION POR NEW TRIAL
Green, Judge,
delivered the opinion of the court:
The motion for a new trial being based upon a ground neither argued nor stated at the time of the submission of the original case, and being supported by a decision of a United States District Court, would seem to be entitled to an expression of the opinion of this court thereon.
Although the point was not raised on the original submission of the case, it is now insisted by plaintiff that under the revenue act of 1921, 42 Stat. 227, estates of decedents dying within one year prior to the enactment of the revenue act of November 23, 1921, are. not subject to the Federal estate tax.
The act of 1921 repealed that portion of the 1918 revenue act which imposed an estate tax and enacted in lieu thereof a different estate tax applicable when the new statute went into force. The act of 1921, however, contained what is *49 commonly referred to as a “ saving clause ” similar to one which was contained in the 1918 act, the purpose of which was plainly to continue in force the provisions of the 1918 act until the 1921 act could apply. This provision was contained in section 1400 (b) of the later act, which"provided:
“ (b) The parts of the revenue act of 1918 which are repealed by this act shall (unless otherwise specifically provided in this act) remain in force for the assessment and collection of all taxes which have accrued under the revenue act of 1918 at the time such parts cease to be in effect, and for the imposition and collection of all penalties or forfeitures which have accrued or may accrue in relation to any such taxes. In the case of any tax imposed by any part of the revenue act of 1918 repealed by this act, if there is a tax imposed by this act in lieu- thereof, the provision imposing-such tax shall remain in force until the corresponding tax under this act takes effect under the provisions of this act.”
The contention of plaintiff is that there is no provision for the act of 1918 to “ remain in force for the assessment and •collection of all taxes ” unless those taxes have “accrued,” and that the decedent in this case having died within one year prior to the enactment of the 1921 act, no taxes had “ accrued ” against his estate. If this theory be correct, then estates of those who died more than one year prior to the enactment of the 1921 act would be taxed, and estates of those who died after the enactment of the 1921 act would also be taxed; but in the case of those who died in the intervening-period no tax would be imposed. No. one would claim that Congress ever intended to enact a law having such absurd and inequitable results, but, however justifiable the presumption may be that it did not so intend, it is not necessary for us to indulge in it in order to ascertain the purpose of this “ saving clause.” A casual survey of the provision set forth above clearly shows that the intent and purpose of Congress was that the estates of all of those who died prior to the enactment of the 1921 act should be taxed under the 1918 statute, and the estates of those who died after the enactment of the 1921 act taxed under the provisions of the later act. In fact, this intent is so plain that “ he who runs may read ” and understand. It needs no citation of authorities *50 to show that when the intent fest it becomes our duty to so construe the act as to carry out that intention unless such a construction can not reasonably be placed upon the language of the act. A careful examination of the whole of the revenue act of 1921 leads us to conclude that-defendant’s case is even stronger than this principle requires, and that the only reasonable construction which can be given the provision in question is one which would sustain the tax in controversy.
It will be observed that the argument of plaintiff is based upon a definition of the word “ accrue ” or “ accrued,” and it is claimed that the construction for which plaintiff contends is supported by the decisions of the Supreme. Court in United States v. Woodward, 256 U. S. 632, and United States v. Mitchell, 271 U. S. 9, 10. In connection with the application of these decisions some confusion of thought seems to have arisen. The question for determination in the case at bar is not how the word “ accrued ” may have been used in some part of the 1918 statute, but how it is used and what meaning should be given it in the provisions of the 1921 statute, which we are called upon to construe. When this is kept in mind, we think it will clearly appear that these cases do not support the position of plaintiff.
The word “ accrue ” as used in the law has two meanings: It is often applied to a present enforceable demand, and as often, if not more often, means simply to arise or to come into existence. In Emerson v. The Shawano City, 10 Wis. 433, it is said:
“ The verb ' to accrue ’ is often and properly used to convey the same idea as the verb ‘ to arise.’ * * * A cause of action may be said to arise, when the contract out of which it grows is entered into or made.”
In Page v. Skinner, 298 Fed. 731, 735, the circuit court of appeals had occasion to pass on the meaning of a provision in the act of February 24, 1919, commonly referred to as the revenue act of 1918. The 1918 act by section 1400 (a) thereof repealed the estate tax of 1916, but in (b) of the same section provided:
*51 “(b) Such parts of acts shall remain in force for the assessment and collection of all taxes which have accrued thereunder, and for the imposition and collection of all penalties or forfeitures which have accrued and may accrue in relation to any such taxes, * * (Italics ours.)
Although the wording is slightly changed, there can be no question but that the word “ accrued ” is used in the same sense as in the similar provision of the 1921 act, which has heretofore been set out, and the circuit court of appeals said further in. the last-named case with reference to the 1918 act:
“ Neither are we in doubt as to the meaning of the word ‘ accrued,’ found in subparagraph (b); as contended by counsel amici curiae, who appear for another estate in like conditions, that it is equivalent to arising under and refers to all taxes, including estate taxes, * * * and is not a restriction to those that were due and payable prior to February 25."
With this construction of the 1918 act we entirely agree, and applying the same rule to the provision of the 1921 act under consideration in the case at bar, it follows that the position now taken by the plaintiff in support of the motion for a new trial is not well founded. In view, however, of the fact that the case of the Wilmington Trust Co. v. United States, 28 Fed. (2d) 205, cited by counsel holds to the contrary, it is considered that our reasons for following the case of Page v. Skinner, sufra, ought to be fully set forth and they accordingly follow.
We do not need to cite authorities to show what the words “ accrue,” “ accrued,” or “ accrual ” mean in a bookkeeping or economic sense. It is well settled both by works on accounting and judicial decisions that books kept on the “ accrual ” basis include items as to which a liability has arisen or exists either for or against the concern for which the books are kept, although these items matured in the future and were not yet due and payable.
It is said that the provisions of section 214 (a) (3) of the act of 1921 indicated the intention of Congress as to how this word should be construed, and that that construction is the one for which plaintiff contends.
*52 The provision upon which plaintiff relies in support of this contention, under the heading of “ Deductions Allowed Individuals ” (parts not material to this case omitted), is as follows:
“(3) Taxes paid or accrued within the taxable year * * *. For the purpose of this paragraph estate, inheritance, legacy, and succession taxes accrue on the due date thereof except as otherwise provided by the law of the jurisdiction imposing such taxes.” (Our italics.)
It will be observed that this provision applies only to “ deductions allowed individuals ” and that it is only “ for the purpose of this paragraph.” The purpose of the paragraph was the allowance of deductions of taxes which had accrued, and for this purpose, and this purpose only, it is provided that estate taxes shall accrue on the due date thereof. The clear implication is that elsewhere the word “ accrue ” should be taken, when applied to taxes, as meaning the time when they were imposed or established as a liability b}»- the law, at least unless the context otherwise indicates. In fact, it would seem that the maxim easpres&io unius est exclusio alterms here applies, the statute having specifically stated that for the purposes of making deductions estate taxes should accrue on the due date thereof, excludes this meaning for other purposes — that is, for the purposes of the remainder of the act. Broom’s Legal Maxims 664. The maxim is a rule of construction. United States v. Barnes, 222 U. S. 513.
Of course, the context might indicate a different meaning, but, as we have already seen, the context in section 1400 (b) of the act of 1921 plainly indicated the intention of Congress that the application of the estate tax should be continuous and that the 1921 act did not create new exemptions from the tax of 1918.
In this connection it should be noted that exactly the same language is xised under the heading of “ Deductions Allowed Corporations ” in section 234 (a) (3) of the 1921 act. Here again Congress made it clear that it fixed the due date as the time when estate taxes should accrue merely for the purposes of that paragraph; that is, for the purpose of fixing ttie time when the deductions on account of such taxes should be made.
*53 In the cases of United Stataes v. Woodward, supra, and United States v. Mitchell, supra, the Supreme Court was construing certain provisions of the revenue acts of 1916 and 1918. The act of 1921 did not enter into either of these cases. In the instant case we are called upon to construe the act of 1921 with additional and different provisions which are controlling, and the decision is governed entirely thereby. The two decisions of the Supreme Court cited above have no application, having been rendered not only under a different statute, but in a different connection.
In the case of United States v. Anderson, 269 U. S. 422, 441, the case of United States v. Woodward, supra, was reviewed, and it is shown that it was decided on the provisions of the act of 1918. One question in the Anderson ease was as to when the munitions tax which was imposed in 1916 accrued, and although the tax was not payable until 1917, it was held that “ in the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued ” in 1916, thus recognizing that the word “ accrue ” was generally used in the statute with reference to taxes in “ the economic and bookkeeping sense ”: that is, as referring to the time when the liability is established instead of the time when it becomes due and payable, if that is a different date. So in this case the estate taxes in question had already “ accrued ” when the 1921 statute was passed. It was further held in the Anderson ease, supi-a, that when the books of the corporation were kept on an accrual basis, the deduction for the taxes of 1916 should be made in that year; and that there was nothing in the Woodward ease to controvert this holding. In fact, an examination of the opinions in the Anderson eme and the Mitehell ease shows that in each the application of the Woodward ease was strictly and expressly restricted to the particular question before the court in that case which was a very different one from the one now being considered.
As the tax became due and payable one year after the decedent’s death, it is obvious that it was intended that it should be assessed before the expiration of the year and it is quite plain from other provisions of the 1918 act that the (ax might be assessed under regulations made by the com *54 missioner even before six months had elapsed since the death of the owner of the estate, provided the regulations so required. The act further provided that the tax should be a lien for 10 years upon the gross estate of the decedent. No date is fixed in the statute from which this 10 years should run, but it seems to have been universally considered that it ran from the date of death of the testator, and the regulations so provided. (Reg. 68, art. 88.) Obviously the lien could not attach at the time of death unless a liability for the tax then came into existence.
It seems unnecessary to carry the argument further, but section 1400 (b) in addition to the particular part thereof which has been discussed above contained the following:
“ In the case of any tax imposed by any part of the revenue act of 1918 repealed by this act, if there is a tax imposed by this act in lieu thereof, the provision imposing such tax shall remain in force until the corresponding tax under this act takes effect under the provisions of this act.”
Title IV, Estate tax, of the act of 1918, was repealed by the act of 1921; and Title IV, Estate tax, of the act of 1921, was enacted in lieu thereof. The ijrovisions imposing the tax therefore remained in full force and effect up until the time of the enactment of the 1921 act, and the tax having by reason thereof accrued, then under the provisions with reference to taxes which had accrued the provisions of the 1918 act remained in force for the assessment and collection thereof. The provision last quoted becomes entirely meaningless if the construction contended for by the plaintiff be adopted. It would have no application except to cases where the tax was due and payable when the 1921 act was adopted, and for that purpose it would be entirely unnecessary and useless.
For the reasons above stated we decline to accept the views expressed in the case of the Wilmington Trust Co. v. United States, supra, and hold that the tax in question had accrued when the 1921 act went into effect.
Another feature of the case should be noted. The claim of the plaintiff for refund, upon which this suit is based,, stated that the assessment in the sum of $2,049,826.91 was made in respect to certain property of which the decedent *55 bad made a transfer on May 9,1912, to trustees under a deed of trust, the aggregate value of which the commissioner found to be $10,514,250. The claim for refund further recited:
“ Upon the execution and delivery of said trust deed, the legal title to all of the securities constituting the trust fund passed to the trustees named therein and the interest in remainder in such trust fund vested - in the issue of the decedent- immediately, subject only to be devested in certain contingencies provided for in said deed; and inasmuch as the said vested interests of such remainderman were never so devested, pursuant to the provisions of said deed, the undersigned, now claims that said transfer so made by said decedent on May 9, 1912, is not subject to tax under the United States estate tax law, pursuant to which this return is made.”
It will be observed that while it was claimed that the trust fund was “ not subject to tax under the United States estate tax law,” the basis of this claim was as stated in the foregoing paragraph which does not refer in any way to the claim now made, nor was there elsewhere in the claim for refund any reference to it. That the claim originally made is not the same as the one now argued is shown by the argument contained in the application for refund which is based on the cases of Shwab v. Doyle, 258 U. S. 529, and Coolidge v. Nichols, 4 Fed. (2d) 112. These cases had some bearing on the original claim made in the application for refund, but it will not be contended that they have the slightest application to the claim now made by the motion for a new trial.
We think the claim now made by plaintiff on motion for a new trial which has been set out and discussed in this opinion is a different and distinct ground from that presented to the commissioner. If we are correct in this, the plaintiff is in any event barred from recovery herein under the rule laid down in Kaltenbach v. United States, 66 C. Cls. 581; Warner-Patterson Co. v. United States [post, p. 237] ; and Red Wing Malting Co. v. Willcuts, 15 Fed. (2d) 626.
It follows that the motion for a new trial must be overruled, and it is so ordered.
Graham, Judge; and Booth, Chief Justice, concur.