**ALKER et al. v. UNITED STATES.**

No. L–3717.

District Court, E. D. New York.

Feb. 26, 1930.

Karl Knox Gartner, of Washington, D. C., for plaintiffs.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y.

BYERS, District Judge.

Motion to dismiss the pleading filed by the plaintiffs herein, which, by them, is called a petition, and in the notice of motion is called the complaint, upon the ground that the same fails to state facts which constitute a cause of action.

No answer has been filed, and the motion therefore presents, in effect, a demurrer, now provided for in the New York state practice by a motion for judgment on the pleadings when no issue of fact is presented. The absence of an answer herein will be assumed to represent, on the part of the government, an admission of the facts as stated in the petition, and an assertion that no cause of action arises therefrom.

The plaintiffs are the executors under the will of Florence A. Alker, who died a resident of Suffolk county, in the state of New York, on May 13, 1921.

Her will was duly probated in the Surrogate's Court of that county, and letters testamentary thereunder were duly issued to the plaintiffs on June 2, 1921.

The plaintiffs paid to the collector of internal revenue for the First district of New York the sum of $166,440.42 between May 11, 1922, and January 31, 1924, in four installments, being the amount duly fixed and determined as that payable for the federal estate tax upon the estate of the said decedent, under the appropriate provisions of the Revenue Act of 1918, approved February 24, 1919 (40 Stat. 1057).

The plaintiffs in this action seek to recover the entire sum so paid, upon the following theory:

That the Congress enacted the Revenue Act of 1921 on November 23, 1921 (42 Stat. 227), which included an estate tax. The repealing clause of that act is section 1400 thereof, and, for present purposes, is quoted as follows:

"Sec. 1400. (a) That the following parts of the Revenue Act of 1918 are repealed, to take effect (except as otherwise provided in this Act) on January 1, 1922, subject to the limitations provided in subdivision (b): * * *

"Title IV (called 'Estate Tax') on the passage of this Act; * * *

"(b) The parts of the Revenue Act of 1918 which are repealed by this Act shall (unless otherwise specifically provided in this Act) remain in force for the assessment and collection of all taxes which have accrued under the Revenue Act of 1918 at the time such parts cease to be in effect, and for the imposition and collection of all penalties or forfeitures which have accrued or may

accrue in relation to any such taxes. In the case of any tax imposed by any part of the Revenue Act of 1918 repealed by this Act, if there is a tax imposed by this Act in lieu thereof, the provision imposing such tax shall remain in force until the corresponding tax under this Act takes effect under the provisions of this Act. The unexpended balance of any appropriation heretofore made and now available for the administration of any such part of the Revenue Act of 1918 shall be available for the administration of this Act or the corresponding provision thereof."

The plaintiffs assert that the repealing clause above quoted actually operates to exclude the estate which they have administered from any federal estate tax, for this reason:

Subdivision (b) means, according to plaintiffs' interpretation, that the estate tax contemplated by the Revenue Act of 1918 remains in force for the assessment and collection of an estate tax, and penalty if any, which has "accrued" under that act, at the time such estate tax ceases to be in effect, i. e., November 23, 1921, when the Revenue Act of 1921 became operative; therefore, if the estate tax upon the estate of the plaintiffs' decedent had not "accrued" on November 23, 1921, the estate tax portion of the 1918 act was not kept alive by the later statute, so as to impose upon the plaintiffs the duty of paying any estate tax.

The plaintiffs say that the word "accrued" means "due and payable" and hence, if no estate tax was "due and payable" under the 1918 act on November 23, 1921 (the effective date of the 1921 statute), the general repeal of the 1918 estate tax contained in subdivision (a) of section 1400 removed a prospective liability to pay an estate tax which would have ripened into a fixed liability only on May 13, 1922.

That, as the decedent died on May 13, 1921, the estate tax under the 1918 act was not "due and payable" until May 13, 1922, and, in consequence, that tax was not saved to the United States by the quoted portions of the 1921 act.

To state the plaintiffs' position fully, it should be added that, on the argument, it was said that there is no estate tax whatever payable by this estate, because, the death of the decedent having occurred prior to November 23, 1921, the estate tax levied under the 1921 act, being of prospective operation from that day forward, could have no application to this estate.

In other words, the plaintiffs attribute to Congress the purpose of rendering exempt from estate tax the property of those who died between November 23, 1920, and November 23, 1921, because no estate tax in respect of such decedents would be due and payable, that is, would have "accrued," on November 23, 1921.

Thus it is that the plaintiffs seek to avoid the effect of that part of section 1400, subdivision (b), of the Act of 1921, which may be paraphrased to the effect (for present purposes) that, in the case of the estate tax of 1918, if there is, in lieu thereof, an estate tax in the 1921 act, the provision imposing the former shall remain in effect until the latter takes effect under the 1921 act.

The theory being, apparently, that, as the 1918 tax had not "accrued," i. e., was not due and payable by these plaintiffs, on November 23, 1921, there was nothing in the 1921 act which imposed a tax in lieu of one not due and payable, and, consequently, the 1918 estate tax did not remain in force until the 1921 estate tax took effect, on November 23, 1921.

The plaintiffs' theory must be clearly understood in all its implications before it can be adjudicated, and the argument in support thereof, in brief, is this: That the word "accrued" had been frequently defined by the Supreme Court to mean "due and payable" when the 1921 act was passed; therefore, Congress intended to have the word mean exactly what the decisions are said to have established; therefore, the term was deliberately chosen with the purpose in mind of establishing immunity from the estate tax by the estates of decedents dying within the period in question.

This argument necessarily precludes the element of inadvertence; it substitutes therefor clear purpose and intent to accomplish that which would seem, on its face, to be incongruous. Not only must the purpose have been deliberate and calculated, but the method chosen was subtle and indirect, almost circuitous.

It would seem clear that such a legislative purpose, if it were entertained at all, would have been capable of rendition in a short, simple sentence, embodying the exemption in direct terms. But no such exemption is so declared. If discovered at all, it is to be construed into recognition under an elaborate disguise.

The contentions of the plaintiffs will be examined in the order in which they are advanced:

1. Taxing statutes are to be strictly construed against the taxing power. None of the authorities cited purports to pass upon the contention here offered by the plaintiffs, and, consequently, there is no rule of decision therein contained which is presently compelling.

In U. S. v. Merriam, 263 U. S. 179, 44 S. Ct. 69, 71, 68 L. Ed. 240, 29 A. L. R. 1547, it was decided that bequests to executors in lieu of commissions were not taxable for income tax purposes. That the benefactions did not lose their essential character as bequests, because acceptance of them precluded the granting of commissions which would have been payable otherwise.

Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211, among other matters, decides the taxable status of alimony.

Any general statement of the attitude of the court of last resort must be accepted as having to do only with the issues presented in the litigation in which the language relied upon is uttered.

2. Congress is presumed to have used the word "accrued" as meaning that which the courts in other cases have decided it does mean.

The principal authority cited to sustain this contention is the Merriam Case, supra, where the court says that: "The word 'bequest' having the judicially settled meaning which we have stated, we must presume it was used in that sense by Congress"—citing cases.

"Bequest" is essentially a legal term. "Accrue" is a word in general use, and having a general meaning, and has also been given a definite application by the courts, as will be seen presently.

The fact that a special meaning or scope has been assigned to a word in general use, for the purpose of interpreting a given statute, would not seem to exclude from the legislative intent the employment of that word in its broad and general sense.

This particular contention, therefore, seems to require consideration as part of the next division of the argument.

3. The Supreme Court in five cases prior to November 23, 1921, decided that the word "accrued" meant "due and payable" when employed by Congress in taxing statutes.

The authorities relied upon are these:

Clapp v. Mason, 94 U. S. 589, 24 L. Ed. 212.

In this case, it appeared that the Revenue Act of 1864 (13 Stat. 287) imposed a tax upon legacies and successions, which was repealed by a statute of July 14, 1870 (16 Stat. 261, § 17), the provisions of which, for present purposes, may be quoted as follows: "And all acts and parts of acts relating to the taxes herein repealed, and [that] all the provisions of said acts, shall continue in full force for levying and collecting all taxes properly assessed or liable to be assessed, or accruing under the provisions of former acts, or drawbacks, the right to which has already accrued or which may hereafter accrue under said acts, and for maintaining and continuing liens, fines, penalties, and forfeitures incurred under and by virtue thereof; and this act shall not be construed to affect any act done, right accrued, or penalty incurred under former acts, but every such act is hereby saved."

A testator died December 4, 1867, while the taxing statute was in effect, and devising real estate as to which his wife took a life estate, with remainder to the plaintiffs. The widow died in 1872, nearly two years after the repealing statute was enacted. The tax having been paid in 1873, an action was brought to recover it by the devisees of the remainder, who asserted that the tax did not accrue until they came into possession of the land which was the subject of the devise.

The court was called upon to decide when the tax was payable according to the provisions of that statute, and held that, because of the difference in the rate of tax depending upon the relationship of the "successor" to the decedent, "It would be difficult to carry out this system in any other manner than by the provision that the succession should not be deemed taxable until such time as the successor should be entitled to its possession."

The court accordingly held that the successors to the decedent were not entitled to possession until the termination of the life estate, and at that date, June 17, 1872, the statute had been repealed.

Mason v. Sargent, 104 U. S. 689, 26 L. Ed. 894.

The same question, under the same will, but having to do with personal property, was adjudicated in the same way, upon the authority of the last case.

Hertz v. Woodman, 218 U. S. 205, 30 S. Ct. 621, 54 L. Ed. 1001.

The statute under construction was the Act of June 13, 1898 (30 Stat. 448), as amended in March 1901 (31 Stat. 938), and

repealed in 1902 (32 Stat. 96); the former being the War Revenue Act of 1898.

The first statute imposed a tax upon legacies or distributive shares amounting in value to more than $10,000.

The second provided that the tax should be due and payable in one year after the death of the decedent.

The repealing statute, effective July 1, 1902, contained a saving clause referring to taxes "imposed" by the taxing act prior to the taking effect of the repealing statute, which were continued in force thereby.

The decedent died March 15, 1902, leaving a will containing legacies taxable under the law, as to amount. These taxes were due and payable "in one year" thereafter, presumably March 15, 1903. Meanwhile, the repealing statute was enacted.

The court decided that the saving clause covered the taxes "imposed" by the 1898 law as amended in 1901, although the same were not "due and payable" when the repealing act took effect, namely, July 1, 1902.

This is claimed to be an adjudication by inference, i. e., that the court said in effect that, if the saving clause had affected taxes "accrued" instead of "imposed," the decision would have been otherwise. The opinion of the court cannot be so construed, whatever may be said concerning expressions used in the dissenting opinion.

The following quotation from the majority view is significant (page 212 of 218 U. S., 30 S. Ct. 621, 622, 54 L. Ed. 1001): "The rule of stare decisis, though one tending to consistency and uniformity of decision, is not inflexible. Whether it shall be followed or departed from is a question entirely within the discretion of the court, which is again called upon to consider a question once decided."

Cochran v. U. S., 254 U. S. 387, 41 S. Ct. 166, 65 L. Ed. 319.

Certain executors sought recovery of taxes paid under the same statute as involved in the last case. The testator died December 27, 1901. Certain legacies were paid prior to July 1, 1902, the effective date of the repealing statute.

The taxes were held to have been legally "imposed" under the procedure employed by the executors and the taxing authorities, and judgment denying recovery was affirmed.

U. S. v. Woodward, 256 U. S. 632, 41 S. Ct. 615, 616, 65 L. Ed. 1131.

The executors of a decedent dying December 15, 1917, paid the estate tax assessed by the Revenue Act of 1916, 39 Stat. 756 (which became due December 15, 1918), on February 8, 1919. They made a return for income tax purposes for the year 1918' (under the Revenue Act of 1918 [40 Stat. 1057]) and sought to deduct the amount paid for the estate tax.

The court held that such deduction was proper, as being a tax "paid or accrued within the taxable year [1918] imposed (a) by the authority of the United States, * * *" and hence the credit claimed in the income tax return for the estate during process of administration should have been allowed.

In deciding that the deduction was proper, the court uses this language: "Here the estate tax not only 'accrued,' which. means became due, during the taxable year of 1918, but it was paid before the income for that year was returned or required to be returned. When the return was made the executors claimed a deduction by reason of that tax. We hold that under the terms of the act of 1918 the deduction should have been allowed."

U. S. v. Mitchell, 271 U. S. 9, 46 S. Ct. 418, 420, 70 L. Ed. 799.

The decedent died November 28, 1918, and a return showing the federal estate tax payable was filed November 26, 1919.

No part of the tax was paid during 1919, but the entire tax was paid in two installments during 1920, namely, on February 25, 1920, $1,000,000, and on May 27, 1920, $1,927,762.64.

Under the Revenue Act of 1918 (40 Stat. 1057) the executors filed an income tax return as for an estate in process of administration, on March 14, 1920, for the taxable year 1919.

The credit claimed by the executors in this case is on the theory of accrual of the estate tax during 1919, and, to justify a credit, the executors should have shown that they kept their books on an accrual basis. The return, itself, shows that the method employed was with reference to items actually received and disbursed. In referring to the Woodward Case, supra, the court says: "The Woodward Case does not support the contention that, where the estate income tax return is made on the basis of income actually received in the taxable year, there may be deducted the estate tax accruing in that year but paid in the following year."

The court in this case explains that the real point decided in the Woodward Case is that the estate tax payment is a deductible item in returning income during process of administration.

This review of the authorities relied upon by the plaintiffs has been deemed requisite to the decision to be made herein, not only to insure an understanding of the plaintiffs' argument, but by reason of the reliance placed upon some or all of these decisions, in the case of Wilmington Trust Co. v. U. S. (D. C.) 28 F.(2d) 205, presently to be considered.

These decisions seem not to require this court to adopt the plaintiffs' theory of this case.

The first two, which construe the Act of 1864 (13 Stat. 287) with reference to a succession dependent upon a life estate, place the decision squarely upon the legal character of the succession, and the necessary method of administering that statute to that succession.

The third case adjudicated the effect of a saving clause in a statute of repeal, in which the tax "imposed" rather than a tax "accrued" was in issue.

The last two cases construe the provisions of the income tax sections of the 1918 Revenue Law with reference to proper items to be deducted, in making returns of income on the part of an estate in process of administration. It is necessary to have this clearly in mind, because, otherwise, it is easy to misconstrue the court's reference to the meaning of the word "accrued" as applied to the circumstances under examination in each of those cases.

It is the business of the court to decide cases, and not to discharge the functions of the compiler of a dictionary.

The different results reached in the Woodward and Mitchell Cases, involving almost identical elements, indicate that the word "accrued" may receive two distinct constructions by the same court, according to the court's view of the proper disposition to be made of the controversy at hand.

For the purpose, then, of construing section 1400, subdivision (b), of the 1921 Revenue Act, in light of the instant issues, this decision will proceed upon the theory that the cases relied upon by the plaintiffs, and heretofore discussed, did not result in judicially determining that "accrued" taxes are only those which were due and payable when this particular statute became effective; and

hence that the Congress is not to be held to have enacted this statute believing and intending that all estate taxes not due and payable on November 23, 1921, were obliterated and annulled even though on that date they were of prospective payment.

Rather than to attribute to Congress the purpose of exempting from estate taxes the estates of a selected group of decedents, namely, those dying between November 23, 1920, and November 23, 1921, it is held that Congress intended to enact the repealing clause in question so that the word "accrued" might be rendered according to a dictionary definition, which was more readily accessible to the legislators than the decisions of the Supreme Court to which reference has been made. That definition is (Standard Dictionary):

"Accrue (v)

"To come as a natural result or increment, as by growth, business, etc.; come into existence, as a right or the like; arise, as an addition, accession, or advantage; accumulate, as six months' interest had accrued.

"2. (Law) To become vested. 3. To increase.

"II. To collect; gather up.

"Accrue (n) 1. * * * 2. An increment; accession. 3. Advantage accruing.

"Accrued. Accumulated, as accrued interest."

This means that the tax payable had arisen in favor of the United States on November 23, 1921; that it was vested in the United States on that day; and that its determination in amount and its collection were mere incidents of the tax, itself, and were to be governed by the appropriate administrative machinery.

Such a construction is in harmony with the sense of the repealing statute, and particularly with the portion reading: "In the case of any tax imposed by any part of the Revenue Act of 1918 repealed by this Act [i. e., the estate tax as found in the 1918 act] if there is a tax imposed by this Act in lieu thereof [i. e., the estate tax as imposed in the 1921 act] the provision imposing such tax [i. e., the 1918 estate tax] shall remain in force until the corresponding tax under this Act [i. e., the 1921 estate tax] takes effect under the provisions of this Act." 42 Stat. 321.

The foregoing is believed to be incompatible with any intention to establish by implication the immunity claimed from estate tax

on the part of the estate of the decedent for whom the plaintiffs are acting.

The views herein expressed are opposed to that which is decided in Wilmington Trust Co. v. U. S., supra, and the length of this opinion is to be explained by the examination which has been made of many of the decisions relied upon by the learned judge who wrote that opinion. The failure of the government to appeal from that decision might be thought to indicate acquiescence therein, were it not for the presentation of this motion by the government, and the other cases herein alluded to.

Since the argument of this cause, there has been submitted, for attention, an opinion dated December 30, 1929, rendered in the United States District Court for the Southern District of Indiana, in the case of Ewbank v. United States, 37 F.(2d) 383, in which Judge Baltzell reaches the same conclusion as the one herein announced. To the same effect is the opinion of the Court of Claims in the case of Hanna v. United States, opinion dated November 4, 1929.

These two decisions are followed, and the motion is granted.